IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALBERTO OCHOA, | |
| Plaintiff, | |
| v. | No. 20-cv-02977 |
| | Judge Franklin U. Valderrama |
| JOSE LOPEZ, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Alberto Ochoa (Ochoa) alleges that he was wrongfully convicted for the murder of Marilu Sochu (Sochu) and that, as a result, he was unconstitutionally incarcerated for 17 years. He has brought suit against three Chicago police officers, Jose Lopez (Lopez), Eugene Schleder (Schleder), and Adrian Garcia (Garcia) (collectively, Officer Defendants), asserting 42 U.S.C. § 1983 constitutional claims and several common law tort claims. R. 1, Compl.[1] He also asserts a *Monell* claim, a *respondeat superior* claim, and an indemnification claim against the City of Chicago (the City) based on the Officer Defendants' conduct. *Id.*

Officer Defendants' Motion to Dismiss (R. 27, Officer Mot. Dismiss) and the City's Motion to Dismiss (R. 26, City Mot. Dismiss), both pursuant to Federal Rule of Civil Procedure 12(b)(6), are before the Court. For the reasons that follow, the Court denies Officer Defendants' Motion to Dismiss, grants the City's Motion to Dismiss

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Counts XI and XII with respect to liability for any Section 1983 claims against Officer Defendants, and denies the City's Motion to Dismiss as to the remaining counts.

## Background

On December 17, 2002, Sochu and her boyfriend, Joe Maldonado (Maldonado), a member of the Two-Six street gang, were standing outside a house when a car drove by them. Compl. ¶ 21.[2] Shots were fired from the car, and Sochu was shot and killed. *Id.* Maldonado estimated that there were three or four Latino men in the car but did not get a look at them. *Id.* ¶ 22. However, he heard the car occupants yell, "King Love," which signified an affiliation with the rival Latin Kings street gang. *Id.*

The Chicago Police apprehended two teenage suspects in the shooting, who were both members of the Latin Kings street gang. Compl. ¶¶ 18, 31. Subject to hours of interrogation, and without a translator or the reading of *Miranda* rights, the two suspects implicated Ochoa in Sochu's shooting. *Id.* ¶¶ 27–46. Based on these allegedly coerced statements, on the morning of December 19, 2002, Lopez, Schleder, and other police personnel arrived at Ochoa's residence. *Id.* ¶ 50. Lopez accused Ochoa of being involved in Sochu's murder and demanded that Ochoa tell him the gun's location. *Id.* ¶ 53. Ochoa denied having any knowledge about the gun or the shooting. *Id.* According to Ochoa, Lopez and Schleder repeatedly questioned and physically beat him. *Id.* ¶¶ 53–56. The police did not recover a weapon or evidence of a crime at his residence. *Id.* ¶ 56. Ochoa was then brought to a police station, where Lopez questioned Ochoa about the shooting and ignored his request to speak to an attorney.

---

[2]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Ochoa. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

*Id.* ¶¶ 57–58. Lopez allegedly continued to beat Ochoa while he maintained his innocence. *Id.* ¶ 58.

Lopez eventually left the interrogation room and later returned with an Assistant State's Attorney to continue his questioning of Ochoa. Compl. ¶¶ 60–61. Lopez told the Assistant State's Attorney that Ochoa had admitted to committing the shooting and hiding the weapon, even though Ochoa had denied any involvement in the shooting. *Id.* ¶ 62. The Assistant State's Attorney summarized the narrative Lopez provided to him in a handwritten statement written in English. *Id.* ¶¶ 62–63. Ochoa, who does not read or write English, could not read the statement, and Lopez did not accurately translate the statement for him. *Id.* ¶¶ 16, 63. Lopez told Ochoa that if he signed the statement, he would be free to leave, so Ochoa signed it without reading or understanding it. *Id.* After signing the statement, Ochoa was charged with first degree murder. *Id.* ¶ 64.

Ochoa alleges that Garcia falsely testified before a grand jury that his investigation revealed that Ochoa shot Sochu and that Ochoa admitted to firing the gun that struck her. Compl. ¶ 65. Ochoa further alleges that Lopez falsely testified at a suppression hearing and at trial that Ochoa admitted that he shot Sochu and disposed of the gun, and that Ochoa signed his confession statement with an understanding of the contents. *Id.* ¶¶ 66, 68. Additionally, Ochoa claims that Schleder falsely testified at the suppression hearing that he never used physical violence against Ochoa and never observed Lopez doing the same. *Id.* ¶ 67.

Ochoa was convicted at trial and sentenced to 90 years' imprisonment. *Id.* ¶ 69. In 2007, the Illinois Appellate Court found that the trial court erred in allowing the prosecution to introduce inadmissible hearsay of co-defendants' statements into evidence and reversed Ochoa's conviction and sentence. Compl. ¶ 70. In 2013, Ochoa was retried for Sochu's murder, Lopez and Schleder gave the same allegedly false testimony, and Ochoa was again convicted and sentenced to 90 years' imprisonment. *Id.* ¶ 71. On February 15, 2017, the Illinois Appellate Court again reversed Ochoa's conviction and sentence based on the trial court's admission of inadmissible hearsay into evidence. *Id.* ¶ 73.

On September 23, 2019, the trial court granted Ochoa's motion to suppress the inculpatory statements attributed to him. Compl. ¶ 85. On October 23, 2019, the State's Attorney's Office dismissed all charges against Ochoa, and he was released from custody. *Id.* ¶ 86. Ochoa had been in custody since his arrest on December 19, 2002, for approximately 17 years. *Id.* ¶ 87.

On May 19, 2020, less than two years after the State's Attorney dismissed all charges against him, Ochoa filed a Complaint against Defendants asserting the following Section 1983 causes of action against Officer Defendants: compelled self-incrimination (Count I); fabrication of evidence (Count II); *Brady* violations (Count III); prolonged pre-trial detention (Count IV); conspiracy (Count V); and failure to intervene (Count VI). He also asserts the following state law claims against Officer Defendants: malicious prosecution (Count VIII); civil conspiracy (Count IX); and intentional infliction of emotional distress (Count X). As for the City, Ochoa alleges a

4

*Monell* policy claim (Count VII), a *respondeat superior* claim (Count XI), and an indemnification claim (Count XII)[3] based on the claims against Officer Defendants. *Id.* Officer Defendants and the City move to dismiss the Complaint pursuant to Rule 12(b)(6). Officer Mot. Dismiss; City Mot. Dismiss.[4]

## Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[3]Ochoa labels his indemnification claim as Count XI even though his *respondeat superior* claim is also labeled as Count XI. *See* Compl. at 34. To eliminate confusion, the Court refers to his indemnification claim as Count XII in this Opinion.

[4]By way of further procedural background, this case was originally pending before Judge Guzman and was transferred to this Court on September 28, 2020. R. 31.

Although "expiration of the statute of limitations is an affirmative defense that may be pled in an answer pursuant to Rule 8(c), it can be used as a basis for granting a 12(b)(6) motion where the case is 'obviously time-barred.'" *Chapman v. Vill. of Hinsdale*, 2008 WL 2557465, at *1 (N.D. Ill. June 23, 2008) (quoting *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005)).

## Analysis

### I. Section 1983 Constitutional Claims Against Officer Defendants

Ochoa asserts four Section 1983 constitutional claims against Officer Defendants. Officer Defendants contend that Ochoa's Section 1983 claims are time-barred because he did not file his lawsuit within two years following the 2007 reversal of his first conviction or the 2017 reversal of his second conviction. Officer Mot. Dismiss. Ochoa does not dispute that a two-year statute of limitations applies to his Section 1983 claims. R. 32, Resp. However, he argues that under the *Heck* rule, his Section 1983 constitutional claims (Counts I, II, III, and IV) were all timely filed based on either when the criminal charges against him were dismissed or when his detention ended in 2019. *Id.*

To state a Section 1983 claim, a plaintiff must show that he or she was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). A plaintiff may only bring a Section 1983 claim against those individuals "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002). Section 1983 serves as a procedural vehicle for lawsuits

6

"vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

It is undisputed that Section 1983 claims have a two-year statute of limitations. *See Lewis v. City of Chi.*, 914 F.3d 472, 478 (7th Cir. 2019) ("A § 1983 claim borrows the statute of limitations for analogous personal-injury claims in the forum state; in Illinois that period is two years."). While state law determines the length of the statute of limitations period, federal law determines when such a claim accrues. *Id.* A Section 1983 claim accrues when the constitutional violation is complete and the plaintiff has a present cause of action—that is, "when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotation and citation omitted).

Under the *Heck* rule, a Section 1983 cause of action for damages attributable to an unconstitutional conviction or sentence (that necessarily implies the invalidity of the conviction or sentence) does not accrue until the conviction or sentence has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 489–90 (1994) The requirement prevents a convicted criminal from collaterally attacking his conviction with a civil suit. *Id.* at 484–87. The parties' dispute centers on when Ochoa's claims accrued and when the clock started ticking. The Court addresses each Section 1983 claim in turn.

## A. Count I – Compelled Self-Incrimination

In Count I, Ochoa alleges that Officer Defendants violated his Fifth and Fourteenth Amendment rights by using violence, threats of violence, trickery, manipulation, and deceit to compel him against his will to make untrue confession

7

statements, even though Officer Defendants knew he did not commit the subject crime. Compl. ¶¶ 92–93.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Fifth Amendment "must be construed broadly to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." *DeLeon-Reyes v. Guevara*, 2020 WL 5800727, at *2 (N.D. Ill. Sept. 29, 2020) (internal quotation and citation omitted).

Officer Defendants argue that Ochoa's Fifth Amendment claim is untimely based on *Johnson v. Winstead,* 900 F.3d 428, 434–39 (7th Cir. 2017), a similar case in which the Seventh Circuit found that the plaintiff's Fifth Amendment right against self-incrimination claim was barred by the statute of limitations. Officer Mot. Dismiss at 5–6. Ochoa concedes that *Johnson,* like his claim here, involved a Fifth Amendment compelled self-incrimination claim but maintains that *Johnson* cannot be reconciled with the United States Supreme Court decision in *McDonough v. Smith*, 139 S. Ct. 2149 (2019). The Court agrees.

In *Johnson*, the criminal defendant/Section 1983 plaintiff was tried twice, in 2007 and again in 2012. 900 F.3d at 433. The Illinois Appellate Court vacated his first conviction in 2010 and remanded the case for a new trial based on the trial court's failure to clarify the law in response to a jury question. It then reversed his second conviction in 2013 due to insufficient evidence of accountability. The State

8

sought review before the Illinois Supreme Court, which then directed the Illinois Appellate Court to reconsider its decision as a result of intervening case law. The Illinois Appellate Court adhered to its original decision to reverse his conviction and issued its reconsideration decision in 2014. *Id.* In 2015, less than a year after the reconsideration decision but more than two years after his second trial, the plaintiff filed suit against Chicago police officers and the City in federal court, claiming, among other things, that detectives violated his Fifth Amendment right against self-incrimination. *Id.* at 434. Confirming that a Fifth Amendment self-incrimination violation occurs when an unlawfully obtained confession is used in a criminal case (*id.* at 438), the Seventh Circuit evaluated the *Heck* rule and held that the plaintiff's Fifth Amendment self-incrimination claim which related to violations at his first trial in 2007 was time barred because the clock began to run in 2010, when his first conviction was reversed (*id.* at 439). It then held that his claim arising from his second trial in 2012 was timely as his conviction was not reversed until 2014, and he filed his suit less than a year later. *Id.*

Approximately two years later, the United States Supreme Court decided *McDonough*, 139 S. Ct. 2149, and expanded the reach of the *Heck* rule to claims that threaten "to impugn . . . the prosecution itself." (*id.* at 2159). In *McDonough*, the prosecutor presented fabricated evidence at trial which resulted in a mistrial. *Id.* at 2154. The defendant was retried, the prosecutor presented the same fabricated evidence, and the second trial resulted in an acquittal. *Id.* The Supreme Court held that the statute of limitations for the fabricated evidence claim did not start running

until "the criminal proceedings against the defendant . . . terminated in his favor." *Id.* at 2154–55. Specifically, it held that a Section 1983 claim for fabricating evidence in a criminal case accrued upon the criminal defendant's acquittal instead of the date on which a constitutional injury first occurred. *Id.* at 2160.

The Seventh Circuit most recently considered the *Heck* rule in *Savory v. Cannon*, 947 F.3d 409, 415 (7th Cir. 2020). In *Savory*, the criminal defendant/Section 1983 plaintiff was paroled in 2006 after serving thirty years in prison for a murder he insisted he did not commit. *Id.* at 412. Five years later, in 2011, the governor of Illinois commuted the rest of his sentence, and in 2015, he pardoned the criminal defendant/Section 1983 plaintiff, and the plaintiff was released. In 2017, less than two years following the pardon and his release, the plaintiff brought a civil rights suit against the City of Peoria and several officers. *Id.* The defendants argued (and the district court agreed) that the plaintiff's Section 1983 claims accrued more than five years before he filed suit, when he was released from custody. Therefore, the district court found that the suit was time-barred. *Id.* at 411. The Seventh Circuit reversed, finding that the *Heck* rule applied. *Id.* Because the plaintiff's Section 1983 claims implied the invalidity of his conviction or sentence, his Section 1983 claims accrued only when the Illinois governor pardoned him. *Id.* at 417–18. ("Until that moment, his conviction was intact and he had no cause of action under section 1983."). The Seventh Circuit explained that the end of the plaintiff's custody was not a favorable termination for the purposes of accrual under the *Heck* rule. *Id.* at 428.

*Johnson* predates *McDonough* and several judges in this District have questioned its continued viability. *See Jackson v. City of Chi.*, 2021 WL 3883111, at *4 (N.D. Ill. Aug. 31, 2021 (holding that the plaintiff's Section 1983 claims did not accrue until the state's attorney gave formal notice that it would not prosecute the criminal defendant); *Savory v. Cannon*, 2021 WL 1209129, at *4 (N.D. Ill. Mar. 31, 2021) (holding that *McDonough* overruled *Johnson* in the context of multiple convictions); and *Brown v. City of Chi.*, 2019 WL 4694685, at *1 (N.D. Ill. Sept. 26, 2019) (holding that *Johnson* is in tension with *McDonough*).

Instead of distinguishing *Johnson*, Ochoa insists that *Brown*, 2019 WL 4694685, at *1, a post-*Johnson* case is highly instructive. Resp. at 7–8. In *Brown*, another court in this District applied the *Heck* rule to find the plaintiff's Section 1983 claims timely. 2019 WL 4694685. The defendant was convicted of arson and murder. *Id.* at *1. At his first trial in 1990, the state presented fabricated evidence, including a signed confession by the defendant that he could not understand and that contained fabricated information. The jury convicted the defendant, and he was sentenced to life in prison without the possibility of parole. *Id.* at *3. After another person confessed to starting the fire at issue, the defendant was granted a new trial. At the second trial, which took place in 2008, the state again presented the fabricated confession, and the defendant was convicted a second time. He sought post-conviction relief, and the trial court granted his petition and vacated his petitions. The state's attorney's office then dropped all charges against him in 2017. *Id.* The criminal defendant/Section 1983 plaintiff then brought claims against the City of Chicago in

11

federal court, and the City raised a statute of limitations defense with respect to the Section 1983 claims. *Id.* at \*4.

The court surveyed Seventh Circuit cases and summarized certain holdings of statute of limitation accruals in the context of *Heck*, including that *Brady* claims do not accrue "until the proceedings terminate in the criminal defendant's favor" (*id.* (citing *Camm v. Faith*, 937 F.3d 1096, 1111 (7th Cir. 2019))), and a plaintiff's malicious prosecution claim does not accrue "until the charges against him were dropped without a retrial—not several years earlier, when his convictions were reversed" (*id.* (citing *Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013))).

On the other hand, the court found that a Fifth Amendment claim related to compulsory self-incrimination accrued after a conviction was reversed even though the criminal defendant remained subject to trial. *Brown*, 2019 WL 4694685, *Id.* at \*4 (citing *Johnson*, 900 F.3d at 439). The court noted that adopting the City's statute of limitations argument would have required the plaintiff to file his claims related to his 1990 trial and convictions in 2005 when he was granted a new trial and when the state was preparing to prosecute him again, which exemplified the situation *McDonough* cautioned against. *Id.* at \*5. The court concluded that the statute of limitations for the plaintiff's fabrication of evidence claim related to his 1990 trial and convictions did not begin to accrue until 2017, when the state vacated his convictions and finally dropped the charges against him. The court also held the same for his compulsory self-incrimination claim, in spite of *Johnson*, because to hold

12

otherwise (i.e., that his claim accrued once his first conviction was reversed) could not be reconciled with *McDonough* or the Seventh Circuit's decision in *Camm*. *Id.*

In reviewing Ochoa's claims, the Court finds that the above-referenced cases, especially *Brown,* support Ochoa's position. True, as Officer Defendants claim, unlike the plaintiffs in some of these cases, Ochoa was never acquitted (R. 33, Reply at 2–3), but acquittal is not the *sine qua none* of deferred accrual under *Heck*, and making such a nuanced distinction ignores Supreme Court and Seventh Circuit precedent. Officer Defendants invite the Court to ignore *McDonough* and apply *Wallace*, 549 U.S. at 393, a pre-*McDonough* case, instead. Reply at 3–5. The Court declines the invitation. It cannot be disputed that the principles that emanate from *McDonough* and its Seventh Circuit progeny stand for the proposition that a criminal defendant/Section 1983 plaintiff cannot initiate certain Section 1983 constitutional claims which call into question the validity of his conviction until his criminal proceedings are over. Notably, but perhaps not surprisingly, Officer Defendants' motion fails to mention *McDonough* or *Savory*.

The Court finds that Ochoa's Section 1983 compelled self-incrimination claim, which necessarily implicated the validity of his conviction, did not begin to accrue until October 23, 2019, when the State of Illinois dismissed all charges against him. *See* Compl. ¶ 86. Accordingly, his self-incrimination claim is timely.

### B. Count II – Fabrication of Evidence

In Count II, Ochoa alleges that Officer Defendants violated his Fifth and Fourteenth Amendment rights by fabricating Ochoa's inculpatory statements and testifying at trial about those statements. Compl. ¶ 101.

Officer Defendants again argue that Ochoa's claim accrued when his convictions were reversed in 2007 and 2017. Officer Mot. Dismiss at 4–6 Since he did not file his lawsuit until 2020, Officer Defendants maintain that his fabrication of evidence claim is time-barred. *Id.*

Ochoa disagrees and insists that since he faced retrial after his convictions were reversed by the Illinois Appellate Court in 2007 and again in 2017, the appellate court reversals did not invalidate his convictions for *Heck* purposes. Resp. at 4–5. The Court agrees. The Supreme Court in *McDonough* explicitly held that a fabricated-evidence claim "does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor." 139 S. Ct. at 2154–55. Here, termination did not occur until October 23, 2019, when the State of Illinois dismissed all charges against Ochoa. *See* Compl. ¶ 86. This claim is also timely.

### C. Count III – *Brady* Violation

In Count III, Ochoa alleges that the Officer Defendants violated his Fifth and Fourteenth Amendment rights by withholding and suppressing exculpatory evidence from Ochoa and from prosecutors who tried both of his cases. Compl. ¶ 109.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the government must disclose evidence favorable to a criminal defendant when it is "material either to guilt

14

or punishment." The duty to disclose includes impeachment evidence. *Youngblood v. West Virginia*, 547 U.S. 867 (2006).

Officer Defendants argue that Ochoa's *Brady* violation claim is also time-barred for the same reasons his claims in Counts I and II are barred. Officer Mot. Dismiss at 4–6. Ochoa retorts that contrary to Officer Defendants' contention, his *Brady* claim did not accrue when the Illinois Appellate Court reversed his convictions, but rather when the State declined to try him a third time and dismissed the charges against him. Resp. at 4–9 (citing *McDonough*, 139 S. Ct. 2149; *Camm v. Faith*, 937 F.3d 1096, 1111 (7th Cir. 2019); and *Johnson v. Dorsey*, 515 F.3d 778 (7th Cir. 2008)).

Again, the Court must follow post-*McDonough* law. In *Camm*, the Seventh Circuit held that the plaintiff's *Brady* claim did not accrue until he was finally acquitted during his third trial. 937 F.3d at 1111; *see also Brown*, 2019 WL 4694685, at *4 (holding that *Brady* claims do not accrue "until the proceedings terminate in the criminal defendant's favor.") (citing *Camm*, 937 F.3d at 1111). Again, Ochoa's *Brady* claim did not accrue until October 23, 2019, when the State of Illinois dismissed all charges against Ochoa. *See* Compl. ¶ 86. This claim is also timely.

### D. Count IV – Prolonged Pretrial Detention

In Count IV, Ochoa alleges that Officer Defendants deprived him of his Fourth and Fourteenth Amendment constitutional rights by causing him to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause. Compl. ¶¶ 115, 117.

15

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The purpose is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. U.S.*, 138 S. Ct. 2206, 2213 (2018) (international quotation and citation omitted).

Officer Defendants argue that Ochoa's Fourth Amendment claim for wrongful pre-trial detention is also time-barred. Officer Mot. Dismiss at 4–6. Ochoa counters that his claim is not time-barred, as a Fourth Amendment claim for wrongful pretrial detention accrues when the wrongful conviction ends (citing *Barnett v. City of Chi.*, 2020 WL 4336063 (N.D. Ill. July 28, 2020) and *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018) (*Manuel II*)). Resp. at 3. The Court agrees.

In *Manuel II*, 903 F.3d 667, 670 (7th Cir. 2018), on remand, the Seventh Circuit stated that under the Fourth Amendment, "there *is* a constitutional right not to be held in custody without probable cause. Because the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention." (emphasis in original). The court further rationalized its holding based on the principle that a claim cannot accrue until the potential plaintiff is entitled to sue, but the detention itself forbids a suit for damages contesting that detention's validity. Based on this reasoning, the court held that the claim accrued when detention ends. *Id.* However, as Officer Defendants point out, the Fourth Amendment is no longer a basis for relief for post-conviction detention once a defendant is convicted of a criminal offense. Reply at 6 (citing *Manuel v. City of Joliet*

16

(*Manuel I*), 137 S. Ct. 911, 920 n.8 (2017)). Once a defendant is convicted, if he challenges the sufficiency of the evidence to support his conviction and any ensuing incarceration, he must do so under the Due Process Clause of the Fourteenth Amendment. *Manuel I*, 137 S. Ct. at 920 n.8.

Yet, Officer Defendants concede that Ochoa could proceed with his Fourth Amendment claim of prolonged pretrial detention for the period between when his conviction was reversed on February 15, 2017 (Compl. ¶ 73) and when he was released on October 23, 2019 (Compl. ¶ 86). Reply at 8. The Court disagrees with Officer Defendants that Ochoa has not specifically pled this claim, as the time period of February 25, 2017 through October 23, 2019 is accounted for in Count IV.

For the time period prior to February 15, 2017, during Ochoa's post-conviction detention and before the Illinois Appellate Court reversed his second conviction, Ochoa still has a valid claim under the Due Process Clause of the Fourteenth Amendment. Missing from Officer Defendants' Reply is any authority that holds that the statute of limitations has expired for Ochoa's claim as it relates to this time period. Officer Defendants suggest that the clock started ticking when Ochoa's pretrial detention ended, and his post-trial custody began. But, as the court in *Hill v. Cook Cnty.* noted, the Seventh Circuit has rejected this approach because it would essentially leave Ochoa out of luck. 463 F. Supp. 3d 820, 838 (N.D. Ill. 2020). A criminal defendant cannot use Section 1983 to contest his custody while it is ongoing, and a claim of unlawful detention can only accrue once he is released from jail. *Id.* (citing *Sanders v. St. Joseph Cnty.*, 806 Fed. Appx. 481, 484–85 (7th Cir. 2020)). At

17

no point was Ochoa released from custody following his initial arrest in 2002 until his release in 2019.

Because Ochoa was not released from custody until October 23, 2019 (Compl. ¶ 86), his Fourth Amendment and Fourteenth Amendment claims did not begin to accrue until that date. Again, because Ochoa filed his complaint on May 19, 2020, less than a year after October 23, 2019, Count IV is not time-barred by the statute of limitations.

All in all, the Court finds that at this stage in the proceedings, Ochoa has not pled himself out of court, as his claims are not obviously time-barred. *See Chapman*, 2008 WL 2557465, at *1; *see also Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 Fed. Appx. 523, 524–25 (7th Cir. 2005) (deeming it irregular to dismiss a claim as untimely under Rule 12(b)(6) and holding that "dismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate only where the plaintiff pleads himself out of court by admitting all the ingredients of an impenetrable defense.") (internal quotation and citations omitted). On this basis, and drawing all reasonable inferences in favor of Ochoa as it must at the motion to dismiss stage (*Platt*, 872 F.3d at 851), the Court denies Officer Defendants' Motion to Dismiss as to Counts I, II, III, and IV.

**II. Remaining Section 1983 Claims Against Officer Defendants**

Ochoa asserts two additional Section 1983 claims against Officer Defendants. In Count V, he alleges that Officer Defendants and others conspired to coerce, induce, and fabricate false evidence to frame Ochoa for the murder of Sochu. Compl. ¶ 123. Further, Ochoa alleges that Officer Defendants deprived him of material exculpatory

evidence to which he was entitled and thereby violated his constitutional rights. *Id.* ¶ 124. In Count VI, he alleges that Officer Defendants and other individuals failed to intervene to prevent the alleged constitutional violations against Ochoa. *Id.* ¶ 131.

Officer Defendants move to dismiss both counts. Officer Defendants first argue that conspiracy and failure to intervene cannot be stand-alone claims without an underlying constitutional violation, and because Counts I through IV are being dismissed, Counts V and VI must also fall. This argument is moot, as the Court is not dismissing Counts I through IV. *See supra* at 8–18.

Relying on *Haliw v. City of S. Elgin*, 2020 WL 1304697, at *4 (N.D. Ill. Mar. 18. 2020), Officer Defendants also argue that Ochoa's conspiracy claim under Count V is barred by the intra-corporate conspiracy doctrine. Officer Mot. Dismiss at 6–7. Relying on *Thomas v. City of Blue Island*, 178 F. Supp. 3d 646, 654 (N.D. Ill. 2016), Ochoa responds that courts in this District have concluded that the doctrine is inapplicable where the alleged misconduct is not the product of routine decision-making by police departments. Resp. at 10–11 (citing *Thomas*, 178 F. Supp. 3d at 654 and other cases). Moreover, Ochoa contends that the *Haliw* holding was limited to the specific conduct and facts of that case. *Id.* at 11.

The intra-corporate conspiracy doctrine holds that "employees of the same corporate entity cannot be liable under a conspiracy theory if the employees act within the scope of their employment." *Haliw*, 2020 WL 1304697, at *4 (citing *Travis v. Gary Cmty. Mental Health Ctr.*, 921 F.2d 108, 110 (7th Cir. 1990)). In *Haliw*, the plaintiff sued a village and four of its police officers. *Id.* at *1. He alleged that the

police officers conspired to violate his rights by filing false and incomplete police reports and charges and by providing false information that led to a criminal prosecution against him. *Id.* He brought various claims against the police officers, including a Section 1983 conspiracy claim. The court, while noting that the law was not clearly established on this point, applied the intra-corporate conspiracy doctrine to the Section 1983 civil conspiracy claim. The court found that the officers were protected by qualified immunity and dismissed the suit on that basis. *Id.* at *4.

As an initial matter, the Seventh Circuit has yet to address whether the intra-corporate conspiracy doctrine applies to Section 1983 cases, and courts in this District are split on whether it does. *See Haliw*, 2020 WL 1304697, at *4; see also *Walker v. City of Chi.*, 2021 WL 4080770, at *4 (N.D. Ill. Sept. 8, 2021) ("doubts about the applicability of the [intra-corporate] conspiracy doctrine in § 1983 cases do not support a finding of qualified immunity."); *Liggins v. City of Chi.*, 2021 WL 2894167, at *6 (N.D. Ill. July 9, 2021) (disagreeing with *Haliw*); *Harris v. City of Chi.*, 2020 WL 7059445, at *4–5 (N.D. Ill. Dec. 2, 2020) (recognizing that the Seventh Circuit "has never held that the intra-corporate conspiracy doctrine bars § 1983 claims against police officers who conspire to violate constitutional rights" and declining to apply the doctrine to the facts of the case because the defendants' conduct was not routine or in the interest of the police department).

This Court, however, need not weigh in on the intra-corporate conspiracy debate here because it agrees with Ochoa—the conduct at issue here is not the product of *routine* decision-making by police departments and is therefore

20

distinguishable from the conduct in *Haliw . Thomas*, 178 F. Supp. at 654 (emphasis added). Ochoa has alleged that Officer Defendants fabricated the statement he signed, fabricated other evidence, beat suspects, and agreed to frame him for Sochu's murder, which is very different from filing false and incomplete police reports and providing false information. Resp. at 11; *see also Haliw*, 2020 WL 1304697, at *1. Such conduct is not routine decision-making by government officials.

For example, in *Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 821 (N.D. Ill. 2006), in a lawsuit brought by a husband and wife against a city and its police officers, the court held that the doctrine was inapplicable because the plaintiffs alleged that the defendants conspired to deprive them of their civil rights. And the deprivation of civil rights could not be a goal of the local government. *Id.* In making such a holding, the court emphasized that "the intra-corporate doctrine only applies when members of a corporation are jointly pursuing the corporation's lawful business." *Id.* (internal quotation and citation omitted). The same rationale applies here. Ochoa has alleged the deprivation of numerous civil rights, and that cannot be the goal of the City or its police department. Accordingly, the Court holds that the doctrine does not apply to Ochoa's Section 1983 civil conspiracy claim.

The Court denies Officer Defendants' motion to dismiss Counts V and VI.

### III.    State Law Claims Against Officer Defendants

Ochoa also brings three state law claims against Officer Defendants. Officer Defendants move for dismissal of his state law claims on various grounds, which the Court reviews in turn.

## A. Count VIII – Malicious Prosecution

In Count VIII, Ochoa alleges that Officer Defendants subjected him to malicious prosecution for Sochu's murder. Compl. ¶¶ 159–61. In response, Officer Defendants argue that Ochoa fails to allege that his criminal case terminated in a manner indicative of innocence, as required by Illinois law for a malicious prosecution claim. Officer Mot. Dismiss at 8–10. They posit that both of his convictions were overturned based on the improper introduction of hearsay evidence, not because of his alleged innocence. *Id.* Ochoa counters that he made the requisite allegations for the purposes of his Complaint, and that does not need to *prove* why prosecutors decided to abandon the charges against him until the summary judgment stage. Resp. at 12–14. The Court agrees with Ochoa.

In order to state a claim of malicious prosecution under Illinois law, a plaintiff must allege: (1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages. *Szczesniak v. CJC Auto Parts, Inc.*, 21 N.E.3d 486, 490 (Ill. App. Ct. 2014); *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2012).

The Court finds that Ochoa has pled all the requisite elements of a malicious prosecution claim. Ochoa alleges that Officer Defendants initiated the underlying criminal proceedings against him by fabricating evidence, manipulating witness testimony, and withholding exculpatory evidence. Compl. ¶ 160. A criminal proceeding is commenced by the filing of a complaint, an indictment, or information.

22

*Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) (citing 725 ILCS 5/111-1). Accordingly, the Court finds that Ochoa has pled the first element. Moving on to the remaining elements, he has alleged that the criminal proceedings against him "were ultimate terminated in [his] favor and in a manner indicative of innocence." Compl. ¶ 159.[5] He has also alleged that that he was improperly subjected to the proceedings "for which there was no probable cause", that they were instituted and continued with malice, and that they resulted in injury to him. *Id.* As such, he has pled all the required elements for a malicious prosecution claim.

And each of the cases Officer Defendants cite for their proposition—that abandonment of criminal proceedings via a *nolle prosequi*[6] and arising from the suppression of certain evidence does not rise to the level of establishing a termination indicative of innocence—are distinguishable for two reasons. Officer Mot. Dismiss at 9–10 (citing *Washington*, 127 F.3d at 557; *Chachere v. City of Chi.*, 2018 WL 1087643, *9 (N.D. Ill. Feb. 28, 2018); *Johnson v. City of Chi.*, 2016 WL 5341810, *5 (N.D. Ill. Sept. 23, 2016); and *Horan v. City of Chi.*, 2010 WL 2836729, at *5 (N.D. Ill. July 16, 2010)). First, each involved abandonment of criminal proceedings via a *nolle prosequi*,

---

[5]The Court notes that Ochoa's allegation is conclusory and that he does not allege any facts suggesting how the criminal proceedings were terminated in a manner *indicative of his innocence*. Yet, Officer Defendants do not present this argument to the Court, and "[i]t is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Vertex Refining, NV, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 374 F. Supp. 3d 754, 765 (N.D. Ill. 2019) (citing *Doherty v. City of Chi.*, 75 F.3d 318, 324 (7th Cir. 1996), *amended* (Mar. 28, 1996)).

[6]"A *nolle prosequi* is not a final disposition of a case but is a procedure which restores the matter to the same state which existed before the Government initiated the prosecution." *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 751 (N.D. Ill. 2012) (citing *Washington v. Summerville,* 127 F.3d 552, 557 (7th Cir. 1997)).

something that Officer Defendants do not state occurred in Ochoa's criminal proceedings or Ochoa has not alleged occurred in his criminal proceedings. *Cf. Beaman v. Freesmeyer*, 2021 WL 3204481, at *14 (Ill. July 29, 2021) ("To support a malicious prosecution claim, the circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal charge. Dismissal of a charge on other than purely technical grounds, such as lack of jurisdiction or defective pleading, may be said to form a basis for a malicious prosecution action.") (internal citations omitted). Second, each of Defendants' cited cases was decided at the motion for summary judgment stage, *not* the motion to dismiss stage.

Officer Defendants' speculation as to the State Attorney's motivation in abandoning its prosecution of Ochoa achieves nothing. *See* Officer Mot. Dismiss at 10. They even admit that it remains Ochoa's *burden to prove* that a *nolle prosequi* was entered for reasons consistent with his innocence. Officer Mot. Dismiss at 9. At this stage in the case, Ochoa has pled enough.

## B. Count X – Intentional Infliction of Emotional Distress

In Count X, Ochoa alleges that Officer Defendants' acts and conduct caused him severe emotional distress and therefore constituted intentional infliction of emotional distress (IIED). Compl. ¶¶ 169–72.

Officer Defendants argue that an IIED claim carries a two-year statute of limitations, and because Ochoa's IIED claim accrued on the date of his arrest on December 19, 2002, and he filed suit after December 19, 2004, his claim is time-

barred. Officer Mot. Dismiss at 8 (citing *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013)). Ochoa disagrees, correctly noting that the statute of limitations for an IIED claim is only one year, but further argues that because his IIED claim is based on the same misconduct that procured his conviction, the clock does not start until his wrongful conviction was overturned. Resp. at 12 (citing 745 ILCS 10/8-101, *Baker v. City of Chi.*, 483 F. Supp. 3d 543, 560 (N.D. Ill. 2020), and other cases).

The Court agrees with Ochoa that *Bridewell* is distinguishable and the analysis in *Baker* is instructive here. As the court noted in *Bridewell*, the Seventh Circuit did not have to address the *Heck* rule because the plaintiff was never convicted. 483 F. Supp. 3d at 560 (citing *Bridewell*, 730 F.3d at 678). The court also noted that several courts in this District "have since concluded that when an IIED claim is based on the same misconduct that procured the plaintiff's conviction, the statute of limitations does not begin to run until the wrongful conviction has been overturned." *Id.* (internal citations omitted). Here, Ochoa was convicted, and the Court has already concluded that the *Heck* rule applies to his twice-reversed convictions. His IIED claim is based on the same misconduct by Officer Defendants that led to his conviction, so the statute of limitations for his claim did not begin to run until his charges were dismissed on October 23, 2019. Compl. ¶ 86. Because Ochoa filed his complaint on May 19, 2020, less than a year after October 23, 2019, his IIED claim under Count X is not time-barred by the statute of limitations.

25

### C. Supplemental Jurisdiction

Lastly, Officer Defendants argue that if the Court dismisses all of Ochoa's federal claims, the Court should decline to exercise supplemental jurisdiction over Ochoa's state law claims in Counts VIII, IX, and X under 28 U.S.C. § 1367(a).[7] Officer Mot. Dismiss at 10–11. Because the Court is not dismissing all of Ochoa's federal claims, this is a moot point and the Court maintains supplemental jurisdiction over Counts VIII, IX, and X.

The Court denies Officer Defendants' motion with respect to Counts VIII, IX, and X.

### IV. Claims Against the City

Finally, Ochoa asserts three claims against the City. In Count VII, Ochoa alleges a *Monell* policy claim, claiming that he suffered as a result of the City's policies and practices. Compl. ¶¶ 136–57. In Count XI, he alleges that because Officer Defendants were members and agents of the Chicago Police Department and acting at all relevant times within the scope of their employment and under the color of law, the City is liable under a theory of *respondeat superior* liability as their principal. Compl. ¶¶ 174–75. In Count XII, Ochoa seeks to hold the City liable for indemnification for any damages awarded against Officer Defendants based on their alleged acts. *Id.* ¶¶ 177–78. The City moves to dismiss all three claims. City Mot. Dismiss at 1–2.

---

[7]In Count IX, Ochoa alleges that Officer Defendants conspired with each other and others to cause his wrongful imprisonment. Compl. ¶¶ 164–167.

The City argues that the *Monell* claim warrants dismissal because such a claim requires a viable underlying constitutional claim against an employee, and based on Officer Defendants' motion, Ochoa has failed to allege a viable underlying constitutional claim. City Mot. Dismiss at 2. This argument fails because the Court is not dismissing the constitutional claims against Officer Defendants. The Court therefore denies the City's motion regarding Count VII.

The City advances two arguments regarding Ochoa's remaining claims. First, it asserts that vicarious liability is unavailable under Section 1983, and the Court should dismiss Ochoa's *respondeat superior* and indemnification counts. City Mot. Dismiss at 1 (citing *Collins v. Al-Shami*, 851 F.3d 727, 734 (7th Cir. 2017)). Ochoa does not respond to this argument, and has waived it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *see also White v. Richert*, 2019 WL 4062539, at *9 (N.D. Ill. Aug. 28, 2019) (citing *Pelfrense v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. We will not do his research for him.")). Notwithstanding this, the Court agrees that vicarious liability does not exist under Section 1983. *Collins*, 851 F.3d at 764. As such, the Court grants the City's motion with respect to Counts XI and XII but only for the City's liability as it relates to the Section 1983 federal claims against Officer Defendants.

Second, the City argues that it cannot be held liable for *respondeat superior* or indemnification without viable underlying state law claims against an employee, again, based on an anticipated dismissal of the state law claims against Officer Defendants. City Mot. Dismiss at 1. Yet again, because the Court is not dismissing all of the state law claims against Officer Defendants, this argument fails. The Court denies the City's motion with respect to Counts XI and XII as it relates to the City's liability for state law claims against Officer Defendants.

## Conclusion

For the foregoing reasons, the Court denies Officer Defendants' Motion to Dismiss [27]. The Court also grants in part and denies in part the City's Motion to Dismiss [26], as follows:

- denies the motion with respect to Count VII;

- grants the motion with respect to Count XI and XII but only for liability for the Section 1983 claims against Officer Defendants; and

- denies the motion with respect to Count XI and XII as it relates to the state law claims against Officer Defendants.

The Court directs Defendants to answer the Complaint consistent with this Opinion on or before 10/19/2021.

Dated: September 28, 2021

United States District Judge
Franklin U. Valderrama

28