**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALBERTO OCHOA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-02977 |
| | ) | |
| v. | ) | Hon. Franklin U. Valderrama |
| | ) | |
| JOSE LOPEZ, EUGENE SCHLEDER, | ) | Magistrate Judge Young B. Kim |
| ADRIAN GARCIA, and the CITY OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO COMPEL ARTURO SIMON TO TESTIFY**

NOW COME Defendants JOSE LOPEZ, EUGENE SCHLEDER, and ADRIAN GARCIA

("Defendant Detectives"), by and through their counsel, Steven B. Borkan, Timothy P. Scahill,

Graham P. Miller, and Emily E. Schnidt of BORKAN & SCAHILL, LTD., and hereby move this

Court to compel Arturo Simon to respond to questions related to the 2002 murder of Marilu Socha

and attempted murder of Joseph Maldonado and certain related topics, and for additional time to

complete Simon's deposition. In support thereof, Defendant Detectives state as follows:

**Background**

This is a civil rights lawsuit wherein Plaintiff Daniel Ochoa claims he was wrongfully convicted

of the murder of fifteen-year-old Marilu Socha as a result of officers coercing him to confess,

fabricating evidence against him, suppressing exculpatory evidence, and he was detained and

prosecuted without probable cause, among other claims. Plaintiff also alleges *Monell* policy and practice

claims against the City of Chicago (the "City").

Marilu Socha was shot and killed in a drive-by shooting on December 17, 2002. Plaintiff and

his three criminal co-defendants, Eduardo Torres, Arturo Bentazos and Arturo Simon were convicted

of the murder. Plaintiff was the only one of the four who had his conviction vacated. On information

1

and belief, Torres is deceased but his conviction was never overturned. Bentazos's and Simon's convictions are intact, and they continue to serve their sentences.

During all four criminal-codefendants' separate criminal proceedings, the prosecution proceeded on the theory that the shooting was gang-related. Specifically, the prosecution argued that Ochoa, Torres, Bentazos, and Simon were members or initiates of the Latin Kings gang, and that they were attempting to shoot Socha's boyfriend, Joseph Maldonado, standing next to Socha, when the bullets inadvertently struck and killed Socha. Maldonado was a member of the rival Two-Six gang. According to the prosecution, Ochoa was the shooter and Simon was serving as lookout from the front passenger-side seat of Bentazos's car.

Simon was tried twice, the first trial ending in a hung jury and the second resulting in conviction for the murder of Socha under an accountability theory and the attempted murder of Maldonado. Simon is currently serving consecutive 45- and 10-year sentences. Prior to trial, Simon filed a motion to suppress his confession, arguing that it was obtained without properly advising him of his *Miranda* rights and was physically coerced. Exhibit A (Motion to Suppress). However, that motion was thereafter withdrawn, and it was never heard by the criminal court. *Id.*; Exhibit B (9/3/10 Appeal Order) at 5, 23; Exhibit C (Contents of Trial (indicating withdrawal of Motion to Suppress on March 3, 204)). Simon did not testify at either of his criminal trials, but at both, his attorneys took the position that Simon was present in the vehicle when Ochoa shot and killed Marilu Socha, but that there was no evidence that Simon played a part in planning of or otherwise aided or abetted the murder. Exhibit D (Trial 1 Closing Argument) at 106-07, 115-16, 118-19; Exhibit E (Trial 2 Closing Argument) at 36, 38-40. Simon never argued or put on evidence at his criminal trials that his confession was coerced, that he was not present when the shooting occurred, or that he was with his girlfriend or his child when Marilu Socha was shot and killed. *Id.*

2

Following his conviction, Simon filed a direct appeal, and his convictions and sentences were affirmed on December 14, 2007. Beginning in 2008, Simon filed several post-conviction petitions advancing a number of new arguments. Prior to his own post-conviction petitions, however, Simon executed an affidavit in support of Ochoa's post-conviction petition on June 23, 2007. Exhibit F (Simon Affidavit 6/23/07). In it, Simon swore that Ochoa was not present when Marilu Socha was shot and killed and had nothing to do with the murder. *Id.* Simon claimed that he only named Ochoa in his statement for his own selfish reasons and because he was beaten, told he would only be used as a witness, and was promised he would be allowed to go home. *Id.* In Simon's later-filed post-conviction petitions, filed in 2008, 2015, and 2019, however, Simon claimed *he* was not present for the shooting and was in fact at his ex-girlfriend Fabiola Hernandez's house on the phone with his current girlfriend Dalia Olmos at the time. Exhibit G (Simon 10/3/08 Post-Conviction Petition) at Bates Nos. 64-65, 79. In his 2015 post-conviction petition, Simon argued that Bentazos and Torres would have confirmed he was not present for the murder, but could not do so because they were exercising their Fifth Amendment privilege during the time of Simon's trials. Exhibit H at 2-5.

Simon's initial post-conviction petition was denied as frivolous and patently without merit on December 12, 2008, and the dismissal was affirmed September 3, 2010. However, Simon filed a subsequent post-conviction petition in 2015 and a supplemental post-conviction petition in 2019. The original and supplemental post-conviction petitions are pending per the Cook County Public Defender's Office, and the Public Defender's Office is present representing Simon in those proceedings.

### Simon's September 19, 2022 Deposition

Simon's deposition was taken on September 19, 2022. Simon gave the deposition from Hill Correction Center in Galesburg, Illinois, where he is currently incarcerated, with counsel appearing by Zoom. Defendant Detectives retained a Spanish-speaking interpreter, and Simon's counsel, Assistant

Public Defender Emily Mallor, met with Simon prior to the deposition with use of the interpreter. The deposition began at approximately 9:00 a.m. and concluded at approximately 1:30 p.m. when Ms. Mallor ended the deposition.

Simon answered nearly all background questions until the questioning turned to his involvement in the Latin Kings gang, where he began to pick and choose his answers. As to his involvement in the Latin Kings gang, Simon answered that he went by the nickname "Magic" when he was a member of the gang.[1] Exhibit I (Simon Deposition) at 21:12-21:17, 23:4-23:9. However, he refused to answer with regard to the last time he went by the name, or why he was known by that nickname among the Latin Kings. *Id.* at 20:15-20:19, 22:3-22:11. Simon refused to answer whether he was currently a member of the Latin Kings. *Id.* at 22:12-22:16. Later, however, Simon stated that he became a member of the Latin Kings as soon as he moved to Chicago, that he joined when he was 15 years old, and that he had been a member for two years. *Id.* at 44:16-45:9. When defense counsel inquired whether he was a member of the Latin Kings at the time of the murder, Simon invoked the Fifth Amendment. *Id.* at 45:10-45:15. When defense counsel pointed out that Simon had waived his Fifth Amendment privilege on the topic, Ms. Mallor asked for a brief recess so she could speak with her client, to which defense counsel agreed. *Id.* at 45:16-49:4. When the deposition resumed, Simon invoked the Fifth Amendment on questions he had already answered (*e.g.*, when he became a member of the Latin Kings) and nearly every substantive question until he elected to testify to his alibi for the murder.

Simon also inconsistently invoked on questions related to his criminal co-defendants, including whether he knew them. *Id.* at 59:7-59:10, 66:8-66:12, 71:7-71:22. Although he did testify that: (1) his most recent post-conviction petition was based on the statements of Bentazos and Torres not

---

[1] Ochoa, Torres, and Bentazos all said during their statements regarding the murder that they knew Simon as "Magic."

being made available to him (*id.* at 15:14-17:21); (2) he never worked with Ochoa, Bentazos or Torres and never saw them at his work (*id.* at 34:6-34:12); (3) did not remember the time he was arrested with Torres (prior to his arrest for the murder of Marilu Socha) (*id.* at 40:10-41:3); and (4) he knew Torres had passed away, that he had passed away in Mexico, and that he learned that information from a relative (*id.* at 68:7-69:7). Simon testified to some degree about his alibi witnesses Dalia Olmos and Fabiano Hernandez, stating that he had never spoke with Ms. Olmos about his case (*id.*at 29:7-29:19) and that he was in contact with Ms. Hernandez who had recently visited him, but he refused to answer whether he had spoken with Ms. Hernandez about his case (*id.* at 29:20-30:18).

Simon then refused to answer questions about whether he knew any of the Defendant Detectives or other police personnel involved in the investigation (*id.* at 82:11-83:16), whether he had been convicted of the murder of Marilu Socha (which he had admitted earlier) (*id.* at 83:21-84:2), whether he had been convicted of the murder of Marilu Socha because he was present in Bentazos's green Ford when she was murdered (*id.* at 84:3-84:11), and how the murder occurred (*id.* at 84:17). However, when asked what he knew about the murder of Marilu Socha, Simon responded, "Nothing." *Id.* at 84:18-85:1. When asked what he was doing during the murder of Marilu Socha, Simon responded: "I was with my family, with my children." *Id.* at 85:14-85:17. Defense counsel followed up, asking which family he was with, at which point Simon again began invoking the Fifth Amendment and refused to answer. *Id.* at 85:18-85:24. Simon also refused to say what he was doing *before* the murder. *Id.* at 85:2-85:12.

At this point, defense counsel pointed out that Simon again had answered questions on the topic of his whereabouts during the murder but was impermissibly picking and choosing what information he was willing to give, and that it was Defendant Detectives' position that Simon had waived any Fifth Amendment right as to that topic. *Id.* at 86:7-87:12. Simon's counsel then asked for another break, after which Ms. Mallor stated she was ending the deposition because she was concerned

Simon did not understand his Fifth Amendment privilege, that Simon had inadvertently waived the privilege, and that she wanted another opportunity to meet with Simon. *Id.* at 91:7-91:23. At the time the deposition was halted, there had been approximately 3 hours and 7 minutes of questioning. *Id.* at 96:1-96:5.

By agreement of the parties, the continuation of Simon's deposition is scheduled for **November 10, 2022**. Counsel for Defendant Detectives and for Simon spoke *via* telephone on September 27, 2022 regarding Simon's invocation of the Fifth Amendment and whether additional time, beyond the approximately 4 hours remaining would be needed to complete Simon's deposition. Defendant Detectives requested a total of 7 hours for his second deposition, which would mean he would sit for a total of 10 hours between the two depositions. Counsel could not come to an agreement on whether Simon had waived his right to invoke the Fifth Amendment as to his whereabouts during the time of the murder and his involvement in the Latin Kings gang, and Simon's counsel objected to allowing an additional 3 hours of deposition time.

## Argument

### A. Simon Must Be Compelled To Answer Questions Relating To His Involvement In The December 17, 2000 Murder Of Marilu Socha And To His Involvement In The Latin Kings Gang.

To the extent Simon had a Fifth Amendment privilege to refuse to answer questions at his deposition,[2] he waived that privilege as to the subjects of his involvement in the murder of Marilu

---

[2] *See Johnson v. City of Chicago*, No. 19-CV-3904, 2021 WL 1952489, at *1 (N.D. Ill. May 10, 2021) (questioning whether a witness has a Fifth Amendment privilege during a post-conviction proceeding where conviction has already become final; *citing Latif v. Obama*, 666 F.3d 746, 759 (D.C. Cir. 2011); *Hassoun v. Searls*, 467 F. Supp. 3d 111, 123 (W.D.N.Y. 2020); *DeLeon-Reyes v. Guevara*, 2020 WL 5800727, at *6 (N.D. Ill. 2020); *Mitchell v. United States*, 526 U.S. 314, 326 (1999) ("It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final. If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared.")).

Socha and his involvement in the Latin Kings gang. The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. However, while a witness may invoke the privilege to refuse to answer incriminating questions in a civil proceeding, a witness does not have "carte blanche by virtue of the Fifth Amendment's self-incrimination clause to refuse to answer questions." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663 (7th Cir. 2002). The Fifth Amendment privilege can be waived by voluntary testimony. As the Supreme Court stated: "It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details. *Mitchell v. United States*, 526 U.S. 314, 321 (1999) (citing *Rogers v. United States*, 340 U.S. 367, 373 (1951)). Thus, when a witness voluntarily testifies about a subject, the privilege is waived for the matters to which the witness testifies, and the scope of the waiver is determined by the scope of relevant cross-examination. *Id.*; *Brown v. United States*, 356 U.S. 148, 154–155 (1958).

At his deposition, Simon responded to questions about both his involvement in the Latin Kings gang and his whereabouts during the murder of Marilu Socha but refused to answer other questions on those subjects before his attorney ultimately halted the deposition. Specifically, Simon admitted that he had been a member of the Latin Kings (Exhibit I at 21:12-21:17, 23:4-23:9, 44:16-45:9. However, he refused to answer with regard to the last time he went by the name, or why he was known by that nickname among the Latin Kings. Simon refused to answer whether he was currently a member of the Latin Kings. *Id.* at 22:12-22:16. Later, however, Simon stated that he became a member of the Latin Kings as soon as he moved to Chicago, that he joined when he was 15 years old, and that he had been a member for two years. *Id.* at. When defense counsel inquired whether he was a member of the Latin Kings at the time of the murder, Simon invoked the Fifth Amendment. *Id.* at 45:10-45:15) but refused to answer whether he was a member at the time of the murder and about what role the gang had in the murder that underlies this case, including the relationship between the

7

gang and his criminal co-defendants (*see, e.g.*, *id.* at 20:15-20:19, 22:3-22:11; 45:10-45:15). Simon also provided his alibi for the murder – that he was with his family at the time and thus knew nothing about the murder – but refused to answer any follow-up questions to test that alibi. Under well-established law, Simon waived his right to invoke the Fifth Amendment as to questions on these subject matters.

The scope of Simon's waiver from his deposition in this case is any topic which is "reasonably related" to his voluntary testimony. *Shakman v. Democratic Org. of Cook Cnty.*, 920 F. Supp. 2d 881, 894 (N.D. Ill. 2013) (finding that a witness waived Fifth Amendment privilege where the witness answered questions on the same subjects in prior interviews during the same proceeding). In other words, "the scope of the waiver is determined by the subject matter on which the defendant breaks her silence." *United States v. Gamble*, 969 F.3d 718, 724 (7th Cir. 2020). Simon could not voluntarily testify about a subject and then invoke the privilege when questioned about the details; he "may not pick and choose what aspects of a particular subject to discuss without casting doubt on the statements' trustworthiness and diminishing the factual inquiry's integrity. *Mitchell*, 526 U.S. at 1308; *Brown*, 356 U.S. at 154.

Under this framework, Simon must be compelled to answer questions related to his knowledge of the murder of Marilu Socha and his involvement in the Latin Kings gang. At his deposition, Simon stated he was at his girlfriend's house at the time of the murder, suggesting he had no role himself in the murder and would have no knowledge of Plaintiff's role or other details of the crime. Exhibit I at 85:14-85:24. Defendants must thus be permitted to cross-examine Simon on the details of this alibi and on prior statements that are contradict his alibi. *Rogers*, 340 U.S. at 373 ("Disclosure of a fact waives the privilege as to details"). This line of inquiry necessarily includes Simon's whereabouts at the time of the murder (and his alleged alibi), his knowledge of the facts and circumstances of the murder, including who was involved and their roles, and prior statements Simon made concerning

8

such knowledge and the circumstances surrounding such statements (*i.e.*, claims of coercion and other topics testing the veracity of his current and past recounting of the murder). Defendants must be allowed to test the veracity of his alibi testimony against the plethora of contradictory evidence.

Simon must also be compelled to fully respond to questions related to his current and past involvement in the Latin Kings gang and his knowledge about the gang's role in the shooting itself and the events following and related to the shooting (*i.e*, Ochoa's membership and advancement in the gang following his role as shooter in the murder of Marilu Socha). *See Neely v. Israel*, 715 F.2d 1261, 1264-65 (7th Cir. 1983) (witness's direct examination denying any connection to criminal co-defendant and his gang placed in issue his relationship with co-defendant and gang and his knowledge about co-defendant, thus of waiving his Fifth Amendment right as to inquiry on cross examination on those topics). Simon answered a number of questions about his involvement in the Latin Kings gang, admitting to his membership, his Latin Kings alias, and some information about when he was a member, but refused to provide details during follow-up questions or answer other questions related to his gang membership. However, once Simon voluntarily testified about some aspects of his involvement in the gang, he could not pick and choose the aspects of the subject matter about which he was willing to testify then refuse to provide details or be cross-examined on issues reasonably related to that subject matter. *Mitchell*, 526 U.S. at 1308; *Brown*, 356 U.S. at 154. Moreover, the criminal co-defendants' involvement in the Latin Kings gang both during and after the murder is probative of their involvement in this gang-related murder about which, as set forth above, Simon has waived his Fifth Amendment right to refuse to testify. Accordingly, this Court should compel Simon, when he sits for the continuation of his deposition, to answer all of the questions set forth in Exhibit J in which Simon invoked the Fifth Amendment, *as well as all follow-up questions reasonably related to the subject matters of Siomon's involvement in and knowledge of Marilu Socha's murder and his involvement in the Latin Kings gang.*

**B.  The Parties Should Be Allowed More Than Seven Hours Total To Complete Simon's Deposition.**

When Simon's deposition resumes on November 10, 2022, Defendant Detectives request the parties be allowed 7 hours more hours to complete the deposition, which would be 3 additional hours above the 7-hour limit, for a total of 10 hours. Rule 30 provides, unless otherwise stipulated or ordered by the court, a deposition is limited to one day of seven hours. Fed. R. Civ. P. 30(d)(1). However, the "court *must* allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." *Id.* (emphasis added). The parties should be granted additional time in this deposition for four reasons.

First, in the event this Court rules Simon waived his Fifth Amendment rights, additional time will be necessary to revisit the issues in which he improperly invoked. A good deal of the questioning in the deposition so far addressed Simon's involvement in the Latin Kings gang and his knowledge about the murder and the criminal co-defendants' involvement. Simon improperly invoked on most of those questions. Accordingly, counsel will need to essentially start from scratch in those areas, requiring additional time.

Second, during Simon's deposition, the parties learned that Simon had filed two additional post-conviction petitions, one in 2015 and a supplemental petition in 2019, and the petitions and related documents had not previously been produced by the Cook County Public Defender's Office pursuant to Defendant Detectives' subpoena. Those documents have since been produced, but Defendant Detectives will need to revisit the questioning related to those post-conviction petitions in light of the statements made and positions taken in those filings, as well as explore foundation for the filings, now that the actual documents are in hand and can be made exhibits at the deposition. *See* Fed. R. Civ. P. 30(d)(1), Advisory Committee Notes (2000) ("If the examination reveals that documents

have been requested but not produced, that may justify further examination once production has occurred").

Third, the deposition so far has proceeded understandably slowly, as Simon is a native Spanish speaker apparently requiring use of an interpreter. The need for an interpreter is expressly contemplated by the Advisory Committee as a reason additional time may be necessary. Fed. R. Civ. P. 30(d)(1), Advisory Committee Notes (2000). Again, Simon is a key witness in the case, being a criminal co-defendant of Plaintiff who Defendant Detectives believe was in the vehicle when Plaintiff shot and killed Marilu Socha. Simon has also taken a number of different positions and made several irreconcilable statements throughout the murder investigation, his criminal trials, appeals, and post-conviction proceedings. Accordingly, there is a substantial amount of substantive and credibility-related questioning that needs to be conducted to fairly examine Simon and prepare for trial, as well as a significant amount of written material and other exhibits on which to question Simon and explore foundation.

Finally, Defendant Detectives anticipate both Plaintiff and the City will have questions for Simon. As a criminal co-defendant who initially took the position at his criminal trials that he was in the vehicle with Plaintiff and saw Plaintiff shoot and kill Marilu Socha, and as another person who now claims he was coerced into giving a confession, Simon is an important a witness for Plaintiff as well as for Defendant Detectives. In addition, the City is an independent defendant in this matter and has asked questions in support to of its defenses at each deposition taken to date. Consequently, additional time will be necessary to afford all counsel adequate opportunity to question Simon. Fed. R. Civ. P. 30(d)(1), Advisory Committee Notes (2000) ("In multi-party cases, the need for each party to examine the witness may warrant additional time").

WHEREFORE, Defendants ADRIAN GARCIA, EUGENE SCLHEDER, and JOSE LOPEZ pray this Court enter an order compelling Arturo Simon to testify on the subjects of his

involvement in the murder of Marilu Socha and his involvement in the Latin Kings gang as fully set forth above, to allow three additional hours, for a total of ten, for the deposition of Simon, and for whatever additional relief it deems just.

Respectfully submitted,

By:    /s/ Graham P. Miller
        Graham P. Miller
        Special Assistant Corporation Counsel

        *Attorneys for Defendants Adrian Garcia,*
        *Eugene Schleder, and Jose Lopez*

Steven B. Borkan
Timothy P. Scahill
Graham P. Miller
Emily E. Schnidt
BORKAN & SCAHILL, LTD.
Two First National Plaza
20 South Clark Street
Suite 1700
Chicago, Illinois 60603
(312) 580-1030