## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ALBERTO OCHOA,           ) | No. 20 CV 2977 |
|       ) | |
|       Plaintiffs,      ) | |
|       ) | |
| v.       ) | Magistrate Judge Young B. Kim |
|       ) | |
| JOSE LOPEZ, EUGENE SCHLEDER,   ) | |
| ADRIAN GARCIA, and CITY OF     ) | |
| CHICAGO,       ) | |
|       ) | November 7, 2022 |
|       Defendants.     ) | |

### MEMORANDUM OPINION and ORDER

Before the court is Defendants Jose Lopez, Eugene Schleder, and Adrian Garcia's motion to compel[1] non-party witness Arturo Simon to answer questions on certain topics related to the murder of Marilu Socha and attempted murder of Joseph Maldonado, and to extend the time to complete Simon's deposition. For the following reasons the motion is granted in part and denied in part:

### Background

The court's opinion addressing Defendants' motion to dismiss details the background and procedural history of this civil rights lawsuit. (R. 39.) Relevant to the current motion, Plaintiff alleges that he was unjustly convicted of Socha's murder because Defendants coerced confessions, fabricated evidence, and withheld exculpatory evidence, among other things. (R. 1, Compl.) Socha's murder occurred

---

[1] Defendant City of Chicago does not join in the current motion. For the sake of simplicity, the court refers to the moving defendants as "Defendants" in this opinion.

in December 2002 as Maldonado was standing outside a house with Socha when a car drove by and shots were fired at them, killing Socha. (Id. ¶ 21.) Maldonado did not get a good look at the car's occupants but thought there were three or four Latino men in the car who yelled, "King Love," signifying an affiliation with the Latin Kings street gang. (Id. ¶ 22.)

In connection with this drive-by shooting, Chicago police officers arrested two primarily Spanish-speaking teenage suspects, Simon and Arturo Bentazos, both of whom were Latin Kings members. (Id. ¶¶ 18, 27, 31.) They denied involvement in, or knowledge of, the shooting. (Id. ¶ 30.) After 15 hours of interrogation, and without a certified interpreter or *Miranda* warnings, Simon and Bentazos claimed Plaintiff was responsible for the shooting. (Id. ¶¶ 36, 38.) Eduardo Torres, also a Latin Kings member, was later arrested and admitted he was in the car but denied being involved in the shooting. (Id. ¶¶ 18, 49.) During subsequent criminal proceedings, prosecutors claimed Plaintiff was the shooter and Simon was the lookout in the front passenger seat of the car. (R. 105, Defs.' Mot. at 2.)

The State of Illinois tried Simon twice for his role in the drive-by shooting, with the first trial resulting in a hung jury and the second in convictions for murder and attempted murder. (Id.) Simon did not testify at either trial. (Id.) However, his attorneys argued at trial that Simon was in the car but did not plan or participate in the shooting. (Id.) In July 2007 Simon signed an affidavit attesting that Plaintiff was innocent and not present when the shooting took place and that he implicated Plaintiff because police officers beat him and told him he would only

be used as a witness and would be released after signing his statement. (Id. at 3 & Ex. F.)

As a result of his convictions, Simon is serving consecutive 45- and 10-year sentences. (Id. at 2.) He appealed his convictions, and they were affirmed in December 2007. (R. 112, Simon's Resp. at 1.) He then filed post-conviction petitions in 2008, 2015, and 2019, asserting that he was not present at the shooting and that he had an alibi—he was at his ex-girlfriend Fabiola Hernandez's house speaking by phone with his current girlfriend Dalia Olmos. (Id. at 1-2; R. 105, Defs.' Mot. at 3.) Simon's 2008 post-conviction petition was denied, but his 2015 and 2019 petitions remain pending. (R. 105, Defs.' Mot. at 3.) The Cook County Public Defender's Office is representing Simon in the 2019 post-conviction proceeding. (R. 112, Simon's Resp. at 2.)

On September 19, 2022, Defendants deposed Simon as a non-party witness in this case. (R. 105, Defs.' Mot. at 3-4 & Ex. I.) The deposition took place by Zoom web conference beginning at 9:00 a.m., with Simon appearing by iPhone from Hill Correctional Center in Galesburg, Illinois, where he is incarcerated. (Id. at 3 & Ex. I at 5, 10.) Simon was asked whether he spoke and understood English, and he answered, "Not a lot." (Id. Ex. I at 7.) Defendants' attorney explained that an interpreter would repeat his questions to Simon in Spanish, and he directed Simon to answer them in Spanish. (Id. Ex. I at 10.) Simon's attorney and the others attending appeared from separate locations, (id. Ex. I at 5), and it was unclear

whether Simon could see all attorneys—or even his own attorney—on his iPhone screen, (R. 112, Simon's Resp. at 2 n.1).

Simon met with his attorney and an interpreter for 30 minutes before the deposition and again for 12 minutes during the deposition after Defendants' attorney argued that Simon had waived his Fifth Amendment privilege as to certain topics. (R. 112, Simon's Resp. at 2; R. 105, Defs.' Mot. at 4 & Ex. I at 46-49.) After the 12-minute conference, Simon's attorney allowed the deposition to continue but ended it at 1:28 p.m.—after three hours and seven minutes of questioning—when she expressed concerns about Simon's "language barrier" and inability to understand his Fifth Amendment rights. (R. 105, Defs.' Mot. at 4 & Ex. I at 86-91; R. 112, Simon's Resp. at 2.) Defendants then filed this motion to compel Simon's continued testimony, including with respect to topics on which Defendants contend Simon waived his Fifth Amendment privilege. (R. 105, Defs.' Mot.) The parties and Simon have scheduled his deposition to resume on November 10, 2022. (R. 112, Simon's Resp. at 3.)

## Analysis

In deciding Defendants' motion the court must determine whether Simon had a basis for asserting the Fifth Amendment privilege during his deposition in this case and whether he waived that privilege—and if so, the scope of such waiver. *See FDIC v. Mahajan*, No. 11 CV 7590, 2014 WL 3359333, at *2 (N.D. Ill. July 9, 2014). The court addresses each of these issues in turn.

## A.      Basis for Fifth Amendment Privilege

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The guarantee against being "involuntarily called as a witness against himself in a criminal prosecution" extends to "any other proceeding, civil or criminal, formal or informal." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). The court construes the privilege broadly in favor of the constitutional right. *See In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1150 (7th Cir. 1981). That said, the individual seeking to invoke the privilege bears the burden of showing that it applies. *See In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 871 n.5 (7th Cir. 1979).

To assert the Fifth Amendment privilege and refuse to answer questions, a witness must show that providing a truthful answer would have "*some* tendency to subject the person being asked the question to criminal liability." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002) (emphasis in original). The witness need not establish the precise manner in which he would incriminate himself by responding to questions, as this would render the privilege meaningless. *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951). But it must be evident from the implications of the questions that responsive answers might result in injury. *Id*. The protection extends to responses that would furnish "a link in the chain of evidence" needed to prosecute the witness. *Id*. at 486.

Based on the facts presented, the court finds that Simon has a valid basis for asserting the Fifth Amendment privilege in response to questions asked at the deposition. There is no dispute that Simon was convicted and sentenced for murder and attempted murder, and that his 2015 and 2019 post-conviction petitions remain pending. (R. 105, Defs.' Mot. at 2-3; R. 112, Simon's Resp. at 2.) Because "adverse consequences can be visited upon [him] by reason of further testimony," Simon risks "further incrimination" by testifying in this case. *See Mitchell v. United States*, 526 U.S. 314, 326 (1999). Accordingly, a valid basis exists for the assertion of the Fifth Amendment privilege.

In a footnote Defendants suggest that Simon may not be able to invoke the privilege in a post-conviction proceeding in which a conviction has become final. (R. 105, Defs.' Mot. at 6 n.2 (citing *Johnson v. City of Chi.*, 19 CV 3904, 2021 WL 1952489, at *1 (N.D. Ill. May 10, 2021)).) But that is not the case here. As discussed, Simon's 2015 and 2019 post-conviction petitions are still pending. (See R. 112, Simon's Resp. at 4-5.) Indeed, "[o]nly when 'no adverse consequences can be visited upon the convicted person by reason of further testimony' does the conviction become final." *Hollinger Int'l, Inc. v. Hollinger Inc.*, 04 CV 698, 2008 WL 161683, at *2 (N.D. Ill. Jan. 16, 2008) (quoting *Mitchell*, 526 U.S. at 326). As such, testimony offered by Simon in this civil matter "continues to have the potential to prejudice [him] in connection with an appeal and a potential retrial," *id.*—and he may invoke the privilege against self-incrimination.

B.    **Waiver of Fifth Amendment Privilege**

Nevertheless, a witness such as Simon can waive his Fifth Amendment right by testifying voluntarily about a subject.  *See Mitchell*, 526 U.S. at 321-22.  But waiver "is not to be lightly inferred."  *Boim v. Quranic Literacy Inst.*, No. 00 CV 2905, 2004 WL 2700494, at *2 (N.D. Ill. Feb. 9, 2004) (quotations and citation omitted).  In fact, courts must indulge "every reasonable presumption" against waiver of constitutional rights.  *Walton v. Briley*, 361 F.3d 431, 433 (7th Cir. 2004) (quotations and citation omitted).  Whether the privilege has been waived depends on the particular facts and circumstances surrounding the case.  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Defendants argue that Simon waived any right to assert the Fifth Amendment privilege when he voluntarily disclosed information about Socha's shooting.  (R. 105, Defs.' Mot. at 6-7.)  As an initial matter, Defendants discuss Simon's attestations in an affidavit in support of Plaintiff's post-conviction petition in Plaintiff's criminal case—in which Simon testified that Plaintiff was not present when the shooting occurred, implying that Simon has the requisite knowledge to say who was present during the shooting.  (Id. at 3.)  But waiver of the Fifth Amendment protection against self-incrimination must occur in a "single proceeding."  *See Shakman v. Democratic Org. of Cook Cnty.*, 920 F. Supp. 2d 881, 893 (N.D. Ill. 2013) ("A person who waives the privilege in one proceeding, however, does not thereby waive it in another proceeding.").  The single-proceeding rule derives from the Supreme Court's ruling in *Mitchell v. United States*, 526 U.S. at

321, that "a witness, *in a single proceeding*, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Id.* (citing *Rogers v. United States*, 340 U.S. 367, 373 (1951) (emphasis added)). Here, because Simon offered his affidavit in support of Plaintiff in a separate criminal proceeding, the court cannot infer that Simon's attestations in that matter amount to a waiver in this civil case.

As for statements Simon made during his September 19, 2022 deposition, however, a waiver may be inferred insofar as he testified voluntarily about certain topics and then invoked the Fifth Amendment privilege as to the details. *See id.* Simon contests his ability to waive the privilege because he says he did not understand "the implications and the parameters" of such privilege. (R. 112, Simon's Resp. at 2.) Based on the facts and circumstances presented, *see Moran*, 475 U.S. at 421, the court disagrees. As Defendants point out, they retained a Spanish-speaking interpreter and Simon's attorney not only attended the deposition but met with Simon with the assistance of the interpreter before the deposition began. (R. 105, Defs.' Mot. at 3-4.) At the beginning of the deposition, Defendants' attorney asked Simon to speak up if he did not understand a question or if Zoom "cut out," and Simon agreed to do so. (Id. Ex. I at 8-9.) Defendants' attorney also asked Simon whether "the best they [could] do there . . . with regard to this deposition [was] an iPhone for the Zoom," and Simon responded affirmatively. (Id. Ex. I at 10.) While an iPhone may not be the best device for a witness to use for a remote deposition, particularly with the deponent's attorney also attending by

8

remote connection, (R. 112, Simon's Resp. at 2 n.2), neither Simon nor his attorney objected to the deposition moving forward in the manner it did.

As the deposition progressed, it became clear that Simon voluntarily answered some questions—including regarding his Latin Kings membership and his alleged alibi—while at the same time invoking the privilege as to other questions relating to the same topics. (R. 105, Defs.' Mot. at 4-5.) When Simon's attorney perceived that her client did not understand the parameters of his privilege, she stopped the deposition to counsel him on his Fifth Amendment rights. (Id. Ex. I at 86-87; R. 112, Simon's Resp. at 7-8.) After that consultation and as detailed below, the deposition continued and Simon divulged additional facts, "pick[ing] and choos[ing]" the details he wished to provide. (R. 105, Defs.' Mot. at 8.)

Such picking and choosing of aspects of a subject to disclose triggers a waiver of the privilege. *See Mitchell*, 526 U.S. at 322 ("The illogic of allowing a witness to offer only self-selected testimony should be obvious even to the witness, so there is no unfairness in allowing cross-examination when testimony is given without invoking the privilege."). Accordingly, and as explained below, the court finds that Simon waived his Fifth Amendment privilege as to certain topics at the deposition where he voluntarily disclosed facts about that subject matter. *See In re High Fructose Corn Syrup*, 293 F. Supp. 2d at 859 ("Without question, the rights granted by the Fifth Amendment may be waived.").

## C.    Scope of Waiver

When the witness makes a voluntary disclosure, "[t]he privilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of relevant cross-examination.'"  *Mitchell*, 526 U.S. at 321 (quoting *Brown v. United States*, 356 U.S. 148, 154-55 (1958)); *see also United States v. Gamble*, 969 F.3d 718, 724 (7th Cir. 2020) ("The Fifth Amendment privilege can be waived, and the scope of the waiver is determined by the subject matter on which the defendant breaks her silence.").  Of course, "questions will arise" as to the scope of any waiver.  *Mitchell*, 526 U.S. at 322.  As a result, the court carefully examines the extent to which Simon volunteered facts in his initial testimony and whether additional questions may be "comprehended within [the] scope" of waiver as to that subject matter.  *Id.*  Here, Defendants claim that Simon waived the Fifth Amendment privilege as to "his involvement in the murder of Marilu Socha and his involvement in the Latin Kings gang."  (R. 105, Defs.' Mot. at 6-7.)

### 1.    Gang Membership

Starting with his gang membership, Simon testified that he went by the nickname "Magic" when he was a member of the Latin Kings.  (R. 105, Defs.' Mot. Ex. I at 19-21.)  When asked when he last used the nickname "Magic," Simon invoked the Fifth Amendment.  (Id. Ex. I at 20.)  Simon asserted the same privilege when questioned about whether he currently was a Latin Kings member and why Latin Kings members called him "Magic."  (Id. Ex. I at 20, 22.)  Later in the

deposition, Simon testified that he joined the Latin Kings when he was 15 years old, and that he was a member for two years.  (Id. Ex. I at 44-45.)  But then he invoked the privilege when asked whether he was a Latin Kings member in December 2002 when Socha was shot and killed.  At this point, Simon's attorney asked for—and received—a 12-minute break to ensure Simon understood the parameters of the privilege.  (Id. Ex. I at 46-48.)  After the break, Simon was asked whether he had been a Latin Kings member since he was 15, whether he was a member in December 2002, and whether he currently is a member.  (Id. Ex. I at 49.)  Simon asserted the Fifth Amendment privilege to each of these questions.  (Id.)

Having reviewed the subject deposition testimony, the court concludes that Simon disclosed certain facts regarding his past involvement in the Latin Kings gang and, as such, he has "waive[d] the privilege as to details" relating to those facts.  *Rogers*, 340 U.S at 373.  Specifically, in his initial testimony Simon disclosed facts about when he first joined the Latin Kings, how long that membership lasted, and his gang nickname "Magic."  During his continued deposition, Simon may be asked "ensuing questions" that fall within the scope of this subject matter, including whether Simon was a Latin Kings member in December 2002 when Socha was killed.  *Mitchell*, 526 U.S. at 321-22; *see also In re Bon Voyage Travel Agency, Inc.*, 449 F. Supp. 250, 253 (N.D. Ill. 1978) ("[O]nce a person has revealed an incriminating fact, requiring him to make other disclosure on the same matter, without further incrimination, does not conflict with the interests protected by the Fifth Amendment.").  This ruling does not extend to gang membership related

questioning that is not embodied within the subject matter to which Simon voluntarily testified. For example, Defendants' attorney asked Simon questions about gang signs, characteristics, territory, roles, activities, and tattoos. (R. 105, Defs.' Mot. Ex. I at 53-59.) Simon consistently invoked the privilege in response to this line of questioning and, therefore, no disclosure is required.

Simon argues that his "ordinary witness" status as a non-party allows him to "pick the point beyond which he will not go" in his testimony—and that here, he clearly chose not to divulge facts at least as to any current Latin Kings involvement. (R. 112, Simon's Resp. at 9-10 (citing *In re Bon Voyage*, 449 F. Supp. at 253 (quotations omitted)).) The Supreme Court in *Mitchell* suggested a possible distinction between a party witness and an ordinary witness in determining the scope of inquiry following a voluntary disclosure. 526 U.S. at 321 (finding that "certainly if he is a party," the witness "determines the area of disclosure and therefore of inquiry"). Regardless, as to any current gang affiliation, Simon asserted his Fifth Amendment privilege and did not disclose facts on that subject. And, in any event, Defendants have not shown why such testimony is relevant to a party's claim or defense in this case. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, Simon may not be asked about current gang involvement during the continued deposition. Nor may he be asked about involvement he may have had in crimes (including gang related crimes) unrelated to a party's claim or defense in this case. (See, e.g., R. 105, Defs.' Mot. Ex. I at 41 (questioning Simon about spray painting Latin Kings signs on property).)

## 2. Socha's Murder

Turning next to Simon's involvement in Socha's murder, in his post-conviction petitions Simon alleged that he was not present at the shooting. (R. 105, Defs.' Mot. at 3.) Instead, he attested that he was at Hernandez's house speaking by phone with Olmos when the shooting occurred. (Id.) Simon made those attestations in connection with his criminal case, not this civil proceeding. Therefore, under the single-proceeding rule they cannot be considered as part of the Fifth Amendment privilege waiver inquiry. *Mitchell*, 526 U.S. at 321; *Shakman*, 920 F. Supp. 2d at 888.

That said, Simon referenced his alleged alibi during his deposition in this case. Specifically, when asked what he was doing at the time of Socha's murder, Simon responded, "I was with my family, with my children." (R. 105, Defs.' Mot. Ex. I at 85.) Despite providing this testimony, he invoked the privilege in response to questions about which family members he was with at that time. (Id. Ex. I at 85-86.) Simon did explain that his former girlfriend Hernandez was the mother of two of his children and that his current girlfriend Olmos was pregnant with his third child at the time of his arrest in connection with Socha's murder. (Id. Ex. I at 27-28.) Simon testified that he has never discussed the murder of Socha or any related proceedings with Olmos. (Id. Ex. I at 29.) At the same time, Simon invoked the privilege when asked whether he has discussed the matters with Hernandez, although Simon did testify that he was in contact with Hernandez in December 2002 and that she had recently visited him in prison. (Id. Ex. I at 29-30.) Given

Simon's testimony regarding his alibi, he waived his privilege with respect to details regarding such alibi. This ruling extends to Simon's whereabouts during the murder and the identity of individuals he was with at the time of the subject murder.

Simon also invoked the privilege when asked whether he knew any police officers involved in the murder investigation, whether he was convicted of the murder, and whether he was in the car from which shots were fired. (Id. Ex. I at 82-84.) Because Simon chose to testify as to his alleged alibi, that initial testimony opens the door to inquiry about his role (or lack thereof) in Socha's murder, including any knowledge he has regarding the car involved, occupants of that car, and how the murder occurred. As to testimony regarding his co-defendants in the underlying criminal case, however, Simon asserted the Fifth Amendment privilege when asked about the co-defendants, including their involvement with the Latin Kings gang and Socha's murder. (Id. Ex. I at 51-52, 59-80.) Simon's testimony therefore did not amount to a waiver as to the co-defendants' alleged involvement.[2]

## D.    Additional Time to Complete Deposition

Defendants ask for an additional seven hours to depose Simon during the continued deposition. (R. 105, Defs.' Mot. at 10-11.) Simon does not object. (R. 112, Simon's Resp. at 12.) Defendants' request would add about three hours to the typical seven-hour limit. *See* Fed. R. Civ. P. 30(d)(1). The court agrees that

---

[2]    Likewise, the waiver resulting from Simon's disclosure of his alleged alibi does not extend to questioning regarding alleged Latin Kings member Ricardo Argueta because Simon invoked the privilege in response to such questioning. (R. 105, Defs.' Mot. Ex. I at 79-82.)

additional time is warranted because Simon improperly invoked the privilege on certain topics for which he had already disclosed some facts, and because his need for an interpreter necessarily slows down questioning. Accordingly, the court allows seven hours of deposition time during the continued deposition, but the hours must be allocated between Defendants and the City of Chicago.

## Conclusion

For the foregoing reasons, the motion is granted in part and denied in part.

**ENTER:**

Young B. Kim
**United States Magistrate Judge**